**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re Application of<br><br>MIYA WATER PROJECTS NETHERLANDS B.V.<br><br>   Applicant,<br><br>To Obtain Discovery for Use in an International Proceeding | **Misc. Action No. 23-00391 (GMM)** |

<u>**OPINION AND ORDER**</u>

  Before the Court are petitioner Miya Water Projects Netherlands B.V.'s ("Miya") *Ex Parte Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery from the Puerto Rico Aqueduct and Sewer Authority for Use in an International Proceeding* (Docket No. 1), *Memorandum of Law in Support of Ex Parte Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery from the Puerto Rico Aqueduct and Sewer Authority for Use in an International Proceeding* (Docket No. 3), and *Motion for Resolution of Pending Ex Parte Application for an Order Under 28 U.S.C. § 1782* (Docket No. 19) (jointly, "Miya's Application").

  In sum, Miya requests that it be allowed to obtain discovery from the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), a Puerto Rican public corporation, for use in a contemplated

proceeding in a Dutch court. After considering the request and the record, the Court **GRANTS** Miya's Application.

## I. BACKGROUND

### A. Miya

Miya is a "Bestolen Vennootschap" (similar to a limited liability company) organized under the laws of Netherlands. (*See* Docket No. 3-1 at 1 ¶ 2). Miya posits that is "a world-leading efficiency-oriented water operator with vast experience and a full-range offer for water utilities including water efficiency, commercial management and water treatment." (Docket Nos. 3 at 8; 3-1 at 1 ¶ 3). Because of its expertise, "Miya holds the largest accumulated know-how in Non-Revenue Water (water that is 'lost' through leakage, theft, metering inaccuracies, and other inefficiencies) projects globally." (Docket Nos. 3 at 8; 3-1 at 2 ¶ 4).

### B. Underlying Dispute

#### 1. Puerto Rico's dire water infrastructure and financial crisis.

According to Miya, Puerto Rico's water infrastructure has been plagued by a system of underinvestment, lack of maintenance, and monitoring. (*See* Docket No. 3 at 8-9). Allegedly, Puerto Rico's dire financial situation only exacerbated these issues. (*See* id. at 9). Indeed, Puerto Rico's financial situation prompted Congress to enact the Puerto Rico Oversight, Management, and Economic

Stability Act ("PROMESA"), Pub. L. No. 114-187, 130 Stat. 549, 48 U.S.C. §§ 2101 et seq. (*see* id.). Relevant here, PROMESA established the Financial Oversight and Management Board for Puerto Rico ("FOMB") "to help Puerto Rico 'achieve fiscal responsibility and access to the capital markets,' including by overseeing the development of and approving Puerto Rico's fiscal plan and budgets." (Id.) (*citing* 48 U.S.C. §§ 2121(a), (b)(1), 2131, 2142).

Miya posits that, in 2017, Hurricanes Irma and Maria hit Puerto Rico, further devastating its water infrastructure. According to the Homeland Security Operational Analysis Center, PRASA faced significant challenges to the provision and restoration of water and wastewater services. (*See* id.). For example, PRASA clients lacked drinking water, and many of PRASA's water plants were damaged and out of service. (*See* id.). Billions of gallons of untreated wastewater were discharged into the San Juan metropolitan area after energy failures at PRASA. (*See* Docket No. 3 at 9).

2. Plans were developed to fix Puerto Rico's water infrastructure.

Miya further asserts that PRASA, with the support of the FOMB, began rebuilding Puerto Rico's water infrastructure. (*See* id. at 5). Accordingly, they state PRASA in conjunction with Puerto Rico's Public-Private Partnership Authority ("P3 Authority"), announced

a public-private partnership to upgrade the water metering infrastructure in Puerto Rico. (*See* id. at 10; Docket Nos. 3-1 at 2 ¶ 5; 3-2). According to Miya, the plan was to replace and update PRASA's water metering system so that it could accurately measure water usage, water leaks, and provide critical analytics. (*See* Docket Nos. 3 at 10; 3-1 at 2 ¶ 5). Purportedly, the updated water metering system would enable reliable revenue collection since the project would "integrate the new metering systems with billing, collections, and customer relationship management infrastructure." (Docket No. 3-1 at 2 ¶ 5).

3.  PRASA and the P3 Authority issued a Request for Qualifications and a Request for Proposals.

To put PRASA's plan into motion, PRASA and the P3 Authority issued a Request for Qualifications ("RFQ") for the project in June 2018. (*See* Docket No. 3-3). PRASA and the P3 Authority sought "more efficient metering systems, remote meter reading technology and re-engineering of its customer services." (Docket Nos. 3-3 at 7; 3 at 10). According to Miya, five bidders for the water metering project responded to the RFQ. (Docket Nos. 3 at 11; 3-1 at 3 ¶ 7). In September 2018, the P3 Authority notified IBT Group ("IBT"), a partner of Miya, and three other bidder consortiums to proceed to the Request for Proposals ("RFP") stage. (Docket Nos. 3-1 at 3 ¶ 7; 3-4). Among the other qualified bidder consortiums was BLU Water Consortium ("BLU Water"), which included member Sensus, a

subsidiary of Xylem Inc. ("Xylem") that produces smart meters. (Docket Nos. 3 at 11; 3-1 at 3 ¶ 7).

On September 26, 2018, PRASA and the P3 Authority issued an RFP. (*See* Docket No. 3 at 11). Miya, as part of the IBT, submitted its indicative response to the RFP in January 2019. (*See* id.; Docket No. 3-1 at 3 ¶ 8). According to Miya, shortly thereafter, on February 15, 2019, PRASA and the P3 Authority notified IBT that it and BLU Water had been selected as the two final proponents for the RFP. (*See* Docket No. 3 at 11; 3-1 at 3 ¶ 8).

4.   Miya and IBT are selected for the RFP.

It is averred that after IBT and BLU Water were given several months to complete their final proposals, on July 17, 2019 Miya and IBT submitted their final RFP response. (Docket Nos. 3 at 11; 3-1 at 3 ¶ 9). On August 12, 2019, the P3 Authority notified Miya, through IBT, that it has been selected as the "Preferred Proponent" for the water metering project. (*See* Docket Nos. 3 at 11; 3-1 at 3 ¶ 10; 3-5). Therefore, Miya allegedly commenced taking the necessary steps and incurred significant resources to advance the water metering project and secure a final contract with PRASA and P3 Authority. (*See* Docket Nos. 3 at 11-12; 3-1 at 3-4 ¶¶ 11-12). In all, Miya posits that it expended more than $2,000,000 because of its efforts to negotiate a final contract with PRASA and P3 Authority. (*See* Docket No. 3-1 at 4 ¶ 12).

5.   <u>The RFP was cancelled before securing a final contract.</u>

Miya claims that following its selection as the "Preferred Proponent," Moonshot Missions ("Moonshot"), its CEO George Hawkins ("Hawkins"), and Xylem hatched a scheme to get the RFP cancelled and reissued on terms more favorable to Sensus. (*See* Docket No. 3 at 12). To launch the supposed scheme, in May 2020, Hawkins, who is a "Strategic Advisor to the Board of Directors of Xylem," became an independent advisor to the FOMB. (*See* <u>id.</u> at 12; 3-1 at 4 ¶ 14; 3-6). Hawkins took the position as the Founder and President of Moonshot. (*See* Docket No. 3-1 at 4 ¶ 14; 3-6). Hawkins, through Moonshot, was retained to "assist [the FOMB] in connection with matters relating to implementation and monitoring for [PRASA's] current and future fiscal plans." (Docket No. 3-6 at 10).

Moreover, it is affirmed that the FOMB, prior to retaining Moonshot, required Hawkins to complete a "Conflict of Interest Disclosure Certification" and "Contractor Certification." (<u>Id.</u> at 17-21, 119-121). There, Hawkins certified that he had no conflicts of interest and "no person" had influenced him in connection with his contract in hopes of "securing any advantages, privileges or favors for the benefit of such person," such as "the written or unwritten promise of a gift, favor, or other monetary or non-monetary benefit." (<u>Id.</u> at 119). According to Miya, Hawkins "intentionally and wrongfully failed to disclose to the FOMB that he had direct financial ties to Xylem and, therefore, its affiliate

Sensus, the losing bidder on the RFP, and that he was offering to work for the FOMB without compensation in hopes of wrongfully securing a lucrative opportunity for Xylem (i.e., the re-issued RFP)." (Docket No. 3 at 8-9).

Thereafter, Miya sustains that Moonshot, Hawkins, Xylem, and Sensus "engaged in a concerted and coordinated effort to abuse Hawkins' position of trust to prevent the conclusion of a final agreement" between PRASA and Miya for the water metering project and "to induce the cancellation of the RFP." (Id. at 13). As part of this effort Hawkins "worked to convince the FOMB to recommend the cancellation of the RFP." (Id.)

Miya alleges that Mr. Hawkins' pressure campaigned was fruitful. Indeed, in October 2021, the FOMB recommended to PRASA and the P3 Authority that they cancel the RFP for the water metering project. (Id.; Docket No. 3-7 at 12). This recommendation was "[b]ased on advice from [the FOMB's] advisors. . ." (Docket No. 3-7 at 12). So, on December 2, 2021, the P3 Authority cancelled the RFP for the water metering project. (Docket No. 3-8).

6.   PRASA issued a new RFP.

Shortly thereafter, PRASA issued a new RFP for a project to replace Puerto Rico's water metering system. (See Docket Nos. 3 at 13; 3-1 at 5 ¶ 16). According to Miya, the "new RFP retain[ed] the core water metering requirements of the original RFP but omits

from the scope of work the water-metering-efficiency, advanced analytics, and commercial process improvements for which Miya is the world leader." (Docket No. 3-1 at 5 ¶ 16). The new RFP "omit[ted] the work of turning the data generated by PRASA's newly acquired smart meters into increased revenues." (Docket No. 3 at 13). Essentially, the new RFP "focused on the purchase and installation of meters, such as those produced by Sensus. . ." (Id. at 14; Docket No. 3-1 at 5 ¶ 16). Xylem, through Sensus is one of the bidders of the new RFP. (See Docket No. 3 at 14).

In sum, Miya sustains that Hawkins, Xylem, and Moonshot worked together to cancel the original RFP and obtain a new RFP which would be more suitable for Xylem. This caused Miya to incur in significant losses. (See Docket No. 3 at 7).

7.   Miya is contemplating proceedings in the Netherlands.

Based on the foregoing, Miya is "now contemplating bringing claims in the Netherlands" against the above-mentioned alleged conspirators for tort claims arising under Dutch law. (Id. at 7, 14; Docket No. 3-9). Given that PRASA was involved in the decision to cancel the original RFP, "Miya believes that PRASA holds information directly relevant and necessary for Miya's contemplated Dutch claims." (Docket No. 3 at 14).

## II. LEGAL STANDARD

28 U.S.C. § 1782 ("Section 1782) provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or <u>upon the application of any interested person. .</u> .To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a) (emphasis supplied). There are four requirements that must be met before a district court can authorize discovery under Section 1782:

> (1)'the person from whom discovery is sought resides or is found in the district where the court sits'; (2) 'the request seeks evidence (the testimony or statement of a person or the production of a document or other thing) for use in a proceeding in a foreign or international tribunal'; (3) 'the request is made by a foreign or international tribunal or by any interested person', and (4) 'the material sought is not protected by any legally applicable privilege.'

<u>In re Tovmasyan</u>, 557 F.Supp.3d 348, 354 (D.P.R. 2021) (*quoting* <u>In Re Schlich</u>, 893 F.3d 40, 46 (1st Cir. 2018)). "If all of these statutory requirements are met, the district court is authorized, but not required, to provide judicial assistance by permitting discovery." <u>In re Schlich</u>, 893 F.3d at 46. Thus, the district court's discretion to allow discovery when all the requirements are met "is not boundless." *See* <u>id.</u> The district court's discretion

is guided by two primary aims: (1) "providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar assistance to our courts." Id. at 46-47 (quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 252 (2004)).

In addition to the four statutory requirements, the Supreme Court has identified four discretionary factors: (1) "whether the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the [Section 1782] request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome. . ." Intel Corp., 542 U.S. at 264-65; see also In re Tovmasyan, 557 F.Supp.3d at 353. "These discretionary factors do not 'crea[te] a 'burden' for either party to meet but rather [are] considerations to guide' the court's decision." In re Tovmasyan, 557 F.Supp.3d at 353 (quoting In re Valitus, Ltd., Civil No. 20-mc-91133 (FDS), 2020 WL 6395591, at *5 (D. Mass. Nov. 2, 2020)).

Lastly, "[i]t is neither uncommon nor improper for district courts to grant applications made pursuant to [Section 1782] ex

part." In re Tovmasyan, 557 F.Supp.3d at 354 (*quoting* In re Fagan, 2019 WL 2267063, at *2 (D. Mass. 2019)); *see also* Gushlak v. Gushlak, 486 F.App'x 215, 217 (2d Cir. 2012).

### III. ANALYSIS

The Court first determines whether Section 1782's four requirements are met. If they are, the Court will then consider the four discretionary factors set forth by the Supreme Court in Intel Corp. *See* In re Schlich, 893 F.3d at 47.

A.   Miya's Application Meets Section 1782's Statutory Requirements.

1.   PRASA is a "person" that "resides or is found" in the District of Puerto Rico.

First, Miya argues that PRASA is a "person" within the meaning of Section 1782. (*See* Docket No. 3 at 15). A "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. PRASA is a "public corporation and an autonomous government instrumentality of the Commonwealth of Puerto Rico. . ." 22 L.P.R.A. § 142. Notably, PRASA is "as amenable to judicial process as any private enterprise would be under like circumstances. . ." Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority, 991 F.2d 935, 942 (1st Cir. 1993) (*quoting* Arraiza v. Reyes, 70 P.R.R. 583, 587 (1949)). PRASA is "unquestionably framed as a private enterprise or business and in fact operates as such." A.A.A. v. Union Empleados A.A.A., 105

D.P.R. 437, 457, 5 P.R. Offic. Trans. 602, 628 (1976). Therefore, the Court finds that PRASA is a "person" for the purposes of Section 1782.

Section 1782's "'resides or is found' language extends 'to the limits of personal jurisdiction consistent with due process.'" In re Tovmasyan, 557 F.Supp.3d at 354 (*quoting* In re Del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019)). A corporation's place of incorporation or principal place of business are "paradig[m]. . .bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (citation omitted). Since PRASA is a public corporation and an autonomous government instrumentality of the Commonwealth of Puerto Rico, the Court also finds that it plainly "resides" in the District of Puerto Rico.

2.   Miya's Application seeks evidence for use in a foreign tribunal.

Miya's Application seeks documentation that is in PRASA's possession for use in a contemplated legal proceeding in the District Court of Amsterdam. (*See* Docket Nos. 3 at 16; 3-1 at 5 ¶ 18; 3-9). While Miya has yet to initiate the proceeding in Dutch courts, the Supreme Court has held that there is no requirement under Section 1782 that the proceeding be initiated. *See* Intel Corp., 542 U.S. at 259 (holding that the "proceeding" for which discovery is sought under Section 1782 must be "within reasonable contemplation, but need not be 'pending' or 'imminent.'"). Here,

Miya's Application accompanied the declaration of Miya's retained Dutch counsel, Davine C. Roessingh ("Counsel Roessingh") of the Dutch law firm De Brauw Blackstone Westbroek N.V. (*See* Docket No. 3-9 at 1). In her declaration, Counsel Roessingh provided a thorough statement describing the claims Miya anticipates pursuing in the District Court of Amsterdam, along with the facts and grounds upon which it may do so. Because Miya's Applications stated the theory of liability, along with the facts and grounds upon which it relies, the Court finds that Miya properly pled that the proceeding before a foreign tribunal is "within reasonable contemplation."

   3.   Miya is an "interested person" for the purposes of Section 1782.

Miya's Application plainly meets the "interested person" requirement since Miya is the expected plaintiff in the contemplated proceeding in the District Court of Amsterdam. *See* Intel Corp., 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [Section 1782]. . .").

   4.   The documentation that Miya seeks is not protected by "any legally applicable privilege."

Miya's Application asserts that the documentation it seeks is not protected by any "legally applicable privilege." (*See* Docket No. 3 at 18). After reviewing the material Miya seeks from PRASA,

Misc. No. 23-00391(GMM)
Page -14-

i.e. documents and communications concerning Miya, IBT, and the decision to terminate the original RFP, the Court agrees with Miya.

B.   <u>Miya's Application Also Meets Intel Corp.'s Discretionary Factors.</u>

   1.   <u>PRASA is not expected to be a party in the Dutch proceeding.</u>

The Supreme Court in <u>Intel Corp.</u> found that Section 1782 is particularly warranted where discovery is sought from parties that are not participants in the foreign proceeding. *See* <u>Intel Corp.</u>, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence their evidence, available in the United States, may be unobtainable absent [Section 1782] aid."). According to Miya's Application and Counsel Roessingh, PRASA is not an anticipated defendant in the Dutch proceeding. (*See* <u>id.</u> at 19; Docket No. 3-9 at 2 ¶ 12) ("Miya anticipates commencing a tort claim against Moonshot, George Hawkins, and/or Xylem. . ."). Further, Counsel Roessingh asserts that "the type of discovery as envisaged by Miya through 1782 Proceedings cannot be obtained in Dutch courts. . ." (Docket No. 3-9 at 10 ¶ 44).

Thus, <u>Intel Corp.</u>'s first discretionary factor weighs in favor of granting Miya's Application.

2.  <u>Dutch courts are receptive to Section 1782 discovery.</u>

Counsel Roessingh expresses that "[t]here are no Dutch laws prohibiting the use of evidence collected under the 1782 Application. There are no Dutch rules of discovery, privilege, or otherwise, that would prevent Miya from obtaining or relying on the evidence sought in their application to the United States courts." (<u>Id.</u> at 7 ¶ 31). Other district courts have confirmed Counsel Roessingh's position. *See* <u>In re Miya Water Projects Netherlands, B.V.</u>, Case No. 23-mc-43 (RCR/GMH), 2023 WL 6294001 (D.D.C. Sept. 27, 2023); <u>In re Hulley Enterprises, Ltd.</u>, 358 F.Supp.3d 331 (S.D.N.Y. 2019); <u>In re Application of 000 Promneftstroy for an Ord. to Conduct Discovery for use in a Foreign Proceeding</u>, 134 F.Supp.3d 789 (S.D.N.Y. 2015). Considering the above, the Court finds that Dutch courts are receptive to the information that could be obtained through Miya's Application. Likewise, the Court finds that <u>Intel Corp.</u>'s second discretionary factor weighs in favor of granting Miya's Application.

3.  <u>Miya's Application does not seek to circumvent foreign proof gathering restrictions.</u>

According to Miya's Application, "there do not appear to be applicable discovery mechanisms available to Miya in the Dutch proceeding." (Docket No. 3 at 21). Under Dutch law, "there is no general right of access to documents in the possession or control of others, especially with regard to non-parties." (<u>Id.</u> at 19). As

such, <u>Intel Corp.</u>'s third discretionary factor weighs in favor of granting Miya's Application.

    4.  <u>Miya's discovery request is not "unduly intrusive or burdensome."</u>

Without prejudice to any potential objection by PRASA, the discovery being sought by Miya does not appear to be unduly intrusive or burdensome. Miya argues, and the Court agrees, that it seeks "only information that is directly relevant to its contemplated claims in the Dutch proceeding concerning the cancelled RFP. The proposed document requests in the subpoena are narrowly tailored to obtain information from PRASA that relates to the concerted effort to cancel the RFP. . ." (<u>Id.</u> at 21; Docket No. 3-11).

So, <u>Intel Corp.</u>'s fourth discretionary factor weighs in favor of granting Miya's Application.

## IV. CONCLUSION

The Court **GRANTS** Miya's Application. Miya, through its counsel, is granted leave to issue a subpoena to PRASA in the form appended as Docket No. 3-11. Miya shall comply with Fed. R. Civ. P. 45. *See* <u>Bayer AG v. Betachem, Inc.</u>, 173 F.3d 188, 192 (3d Cir. 1999) (holding that the Federal Rules of Civil Procedure are incorporated by reference into Section 1782).

**Misc. No. 23-00391(GMM)**
**Page -17-**

IT IS SO ORDERED.

In San Juan, Puerto Rico, November 3, 2023.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE